IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| CLARENCE L. ARTIS, JR.,<br><br>Petitioner,<br><br>vs.<br><br>DAVID ROCK, Superintendent, Upstate Correctional Facility,[1]<br><br>Respondent. | No. 9:12-cv-00814-JKS<br><br>MEMORANDUM DECISION |

Clarence L. Artis, Jr., a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Artis is currently in the custody of the New York State Department of Corrections and Community Supervision and is incarcerated at Upstate Correctional Facility. Respondent has answered, and Artis has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On October 22, 2009, a jury found Artis guilty of a criminal sexual act in the first degree for having his seven-year-old daughter perform oral sex on him. Artis moved through counsel to set aside the verdict pursuant to New York Criminal Procedure Law ("CPL") § 330.30 on the ground that he received ineffective assistance of counsel.

On October 30, 2009, the trial court informed the parties that one of the jurors ("Juror No. 8") called the court and relayed a conversation that had occurred during deliberations. The jurors had discussed whether Artis was incarcerated or had been indicted when, in March 2009, he wrote a letter to his daughter telling her that he wanted to take her to Disneyland. According

---

[1]      David Rock, Superintendent, Upstate Correctional Facility, is substituted for Superintendent, Sing Sing Correctional Facility. Fed. R. Civ. P. 25(c).

to the Juror No. 8, another juror ("Juror No. 6") stated that her husband was on the grand jury that indicted Artis and that Artis was in jail at that time.

The prosecutor responded that his office had spoken with Juror No. 6 and that her husband had not been on the grand jury that indicted Artis. Artis's counsel stated that he intended to supplement his motion to set aside the verdict to include a juror misconduct claim and subsequently submitted a supplemental affidavit in support of Artis's CPL § 330.30 motion.

On February 1, 2010, the court denied the motion on the record. The court denied Artis's first claim—that counsel was ineffective—because counsel "provided more than adequate counsel throughout the[] proceedings." The court also rejected Artis's juror misconduct claim. It noted that Juror No. 8 refused to provide a sworn affidavit repeating the information that she had previously provided not under oath. The court further noted that the prosecution contacted the other 11 jurors "[a]nd the thrust of that is seven of them absolutely denied ever hearing that. Some indicated they heard something along that line, but they couldn't recall exactly what it was. And all 11 of them said under any set of circumstances it had absolutely nothing to do whatsoever with their verdict of guilty in this case."

By papers dated February 4, 2010, Artis, proceeding through counsel, renewed his CPL § 330.30 motion and attached a sworn affidavit from Juror No. 8 stating that "a different verdict may have been reached if [the jury] were permitted to hear the testimony of the caseworkers who interviewed the child, . . . and see the videotaped interview." Juror No. 8 again averred that Juror No. 6 "told us during deliberations '[Artis] knew he was going to trial when he wrote the letter in March 2009 to his daughter,['] because her husband was on the Grand Jury who voted to

indict Mr. Artis."  She further stated that, as a result of Juror No. 6's statement, "I believe Mr. Artis was unfairly treated and deserves a new trial."

The prosecutor opposed the motion, attaching affidavits from the other eleven jurors, including Juror No. 6.  Juror No. 6 averred that she had stated during deliberations that her husband had sat on a grand jury and that it was a month-long process, but denied that she had stated that her husband sat on the grand jury that indicted Artis.  Seven of the jurors stated that they either did not recall or did not hear that Juror No. 6's husband sat on the grand jury that indicted Artis.  One of the jurors believed that Juror No. 6 had stated that her husband sat on the grand jury that "decided if Artis's case went to trial," but noted that "another male juror [s]topped her and told her it was not relevant."  She further stated that the "comment did not have any impact on [her] guilty verdict."

On February 8, 2010, the court denied the renewed CPL § 330.30 motion.  It concluded that Juror No. 8's statement that the jury's verdict might have been different if they had been permitted to hear the testimony of the caseworkers who interviewed the victim and see the videotaped interview was "sheer speculation on her part" and thus insufficient to establish ineffective assistance of counsel.  The court likewise rejected Artis's juror misconduct claim because "[t]he jury was polled" and Juror No. 8 made "no allegation in her affidavit that the only reason she voted guilty was because of what some juror purportedly told her even though the rest of the jurors denied that occurred in the fashion she alleges."  The court concluded that it was "an attempt to engage in impeachment of a jury's verdict . . . [a]nd there are no grounds for misconduct here that this Court sees would even require the scheduling of a hearing, a fact finding hearing."

The trial court then adjudicated Artis a second felony offender and sentenced him to a determinate prison term of twenty years plus five years of post-release supervision. On February 16, 2010, the court resentenced Artis to a ten-year term of post-release supervision, stating that the ten-year period was the minimum permitted by law.

Through counsel, Artis appealed his conviction to the Appellate Division. He filed a counseled brief and appendix claiming that the court should have held a hearing on his juror misconduct claim. Artis also filed a *pro se* supplemental brief in which he claimed that: 1) the verdict was against the weight of the evidence and legally insufficient to support the conviction; 2) counsel was ineffective; 3) the trial judge was biased; 4) the prosecutor committed a *Brady* violation; and 5) he was denied his right to a speedy trial.

The Appellate Division affirmed his conviction in its entirety in a reasoned opinion. Counsel for Artis sought leave to appeal to the New York Court of Appeals solely on the juror misconduct claim. The Court of Appeals summarily denied Artis's application on March 30, 2012. Artis timely filed a Petition for a Writ of Habeas Corpus to this Court on May 14, 2012.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Artis raises the following grounds for relief: 1) juror misconduct; 2) ineffective assistance of trial counsel; 3) insufficient evidence to support his conviction; 4) prosecutorial misconduct; 5) judicial bias; and 6) speedy trial violation.

III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.
§ 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or
involved an unreasonable application of, clearly established Federal law, as determined by the
Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable
determination of the facts in light of the evidence presented in the State court proceeding,"
§ 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that
contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that
are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives
at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the petition raises issues of the proper application of state law, they are
beyond the purview of this Court in a federal habeas proceeding.  *See Swarthout v. Cooke*, 131 S.
Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was
correctly applied).  It is a fundamental precept of dual federalism that the states possess primary
authority for defining and enforcing the criminal law.  *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62,
67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and
application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state
court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536
U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned
decision" by the state court.  *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*,
229 F.3d 112, 118 (2d Cir. 2000).  Under the AEDPA, the state court's findings of fact are

presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A.     Exhaustion

Respondent contends that Artis has failed to exhaust all but his juror misconduct claim. This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). To be deemed exhausted, a claim must have been presented to the highest state court that may consider the issue presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal. *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005).

On direct appeal, Artis's counsel raised only the juror misconduct claim. Artis also submitted a *pro se* supplemental brief which raised the other claims to the Appellate Division. After his appeal was denied, Artis's counsel then petitioned for review to the Court of Appeals, again raising only the juror misconduct claim. Artis nonetheless contends in his Traverse that he fully exhausted his claims because his appellate counsel additionally submitted Artis's *pro se* supplemental brief in his petition for review of the appellate decision.

As Artis contends, his appellate counsel's letter indicates that the *pro se* supplemental brief was enclosed in the leave application. However, appellate counsel did not mention any of the issues asserted in Artis's supplemental *pro se* brief, and Artis did not file a *pro se* leave application. It therefore does not appear that Artis "fairly presented" those claims to the New

York Court of Appeals. *See Jordan v. Lefevre*, 206 F.3d 196, 198-99 (2d Cir. 2000) (finding that appellate counsel's "arguing one claim in his letter while attaching an appellate brief without explicitly alerting the state court to each claim raised does not fairly present such claims for purposes of the exhaustion requirement underlying federal habeas jurisdiction").

This Court nonetheless may deny his claim on the merits and with prejudice. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). This is particularly true where the grounds raised are meritless. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005). Accordingly, this Court declines to dismiss the claim solely on exhaustion grounds and will instead reach the merits of the claims as discussed below.

B.      Merits

        Claim 1: Juror Misconduct

        Artis first argues that one of the jurors committed misconduct during deliberations by informing the other jurors that her husband sat on the grand jury that indicted Artis and by commenting that the letter Artis wrote to his daughter evinced a consciousness of guilt. Juror No. 8 attempted to impeach her guilty verdict in two ways. First, she stated that "a different verdict may have been reached if [the jury] were permitted to hear the testimony of the caseworkers who interviewed the child, . . . and see the videotaped interview." She additionally averred that Juror No. 6 "told us during deliberations '[Artis] knew he was going to trial when he wrote the letter in March 2009 to his daughter,['] because her husband was on the Grand Jury who voted to indict Mr. Artis." She further stated that, as a result of Juror No. 6's statement, "I believe Mr. Artis was unfairly treated and deserves a new trial." Only Juror No. 8's allegation

about Juror No. 6's statement raises a proper issue of verdict impeachment that this Court must

address.[2]

The appellate court rejected this claim on direct appeal, concluding:

> County Court did not err in denying [Artis's] CPL 330.30 motion without a hearing. A court may set aside a verdict if "during the trial there occurred, out of the presence of the court, improper conduct by a juror, . . . which may have affected a substantial right of the defendant and which was not known" prior to the verdict being rendered (CPL 330.30[2]). However, "not every misstep by a juror rises to the inherently prejudicial level at which reversal is required." [Artis] submitted the affidavit of a juror who averred that another juror stated during deliberations that her husband was on the grand jury that voted to indict [Artis], and that the indictment was voted on prior to [Artis] writing the letter to his daughter. The implication was that [Artis] was aware of the indictment when he wrote the letter, and thus was trying to influence her testimony. The averring juror did not indicate that she was swayed to vote guilty based upon this information, stating only that after the statement was made, she felt that [Artis] "was treated unfairly." Despite claiming in her affidavit that she believed [Artis] was not guilty, she did not explain why she had voted guilty and announced that verdict when the jury was polled. The People presented affidavits from the other 11 jurors. The accused juror averred that she mentioned her husband having previously served on a grand jury, but that she did not say he was on the grand jury that voted to indict [Artis]. Court records show that her husband was not on that grand jury. Several jurors did not recall having heard anything about another juror's husband being on a grand jury. Others heard some comment on the topic, but all averred that the statement did not influence their decision to convict [Artis]. Some even reminded their fellow jurors of the court's instruction that they were not to consider anything that was not evidence. Although the affidavits are conflicting and may raise a question as to exactly what the one juror said about her husband's grand jury service, a hearing was not required because the motion papers did not sufficiently assert that juror misconduct—if any occurred—was prejudicial to [Artis] so as to affect a substantial right, as no juror indicated that the statement —even if made—impacted his or her guilty vote.

---

[2]    Generally, "[a]ffidavits and statements by jurors may not ordinarily be used to impeach a verdict once the jury has been discharged unless extraneous influence has invaded the jury room." *Jacobson v. Henderson*, 765 F.2d 12, 14 (2d Cir. 1984) (citations omitted). This rule is codified in the Federal Rules of Evidence which expressly prohibit the use of a juror's affidavit to impeach a verdict except where the affidavit alleges that the jury was subjected to "extraneous prejudicial information" or improper "outside influence" or that a mistake was made in entering the verdict on the verdict form. FED. R. EVID. 606(b); *see also Jacobson*, 765 F.2d at 15 (relying on Rule 606(b) to deny hearing where juror affidavit did not allege "extraneous prejudicial information or outside influence").

"[T]he determination of whether a petitioner's Sixth Amendment rights have been violated by the jury's consideration of extra-record information requires a determination of whether the extra-record information had a prejudicial effect on the verdict." *Loliscio v. Goord*, 263 F.3d 178, 185 (2d Cir. 2001). Any prejudice that is presumed by the consideration of extra-judicial information can be overcome by a showing that the exposure to the information was harmless. *United States v. Greer*, 285 F.3d 158, 167 (2d Cir. 2002) (finding no prejudicial impact where a juror revealed during deliberations that his brother was mentioned by a witness in connection with drug sales by the defendant). "Where an extraneous influence is shown, the court must apply an objective test, assessing for itself the likelihood that the influence would affect a typical juror." *Id.* (quoting *Bibbins v. Dalsheim*, 21 F.3d 13, 17 (2d Cir. 1994) (per curiam)); *accord Corines v. Superintendent, Otisville Corr. Facility*, 621 F. Supp. 2d 26, 40-41 (E.D.N.Y. 2008). "If the 'hypothetical average jury' would have been coerced or led astray . . . then a new trial [would] be necessary." *United States v. Ianniello*, 866 F.2d 540, 544 (2d Cir. 1989). Because the determination is an objective one, it is improper to inquire into how the information affected a juror's vote. *Id.* The Second Circuit has noted that these claims are "typically [resolved by] proceed[ing] immediately to the harmless error determination, assuming without deciding that a Sixth Amendment violation has occurred." *Loliscio*, 264 F.3d at 185 (citing *Bibbins*, 21 F.3d at 16-17). This Court will therefore assume, without deciding, that a Sixth Amendment violation has occurred and will immediately address whether the violation was harmless.

In this case, the prosecution introduced the letter during its cross-examination of Artis. Artis testified that, from January 2008 to the trial, it was his belief that the victim's mother

coerced the victim into making false allegations of sexual abuse.  The prosecution introduced the March 2009 letter, in which he told his daughter that he still loved her mother and wanted to make her his wife, to impeach his testimony and suggest that, at the time he wrote the letter, Artis did not believe that the mother was unduly influencing the victim.  The prosecution also asked about the promise Artis made to his daughter:

> Q     . . .  Did you also promise to take [the victim] and your other children, including [the victim] to Disneyland some day?
>
> A     Yeah.  I promised them that in Federal prison.  I was in Federal prison promising that.
>
> Q     Did you send [the victim] a letter in March of this year telling her that you want to take her to Disneyland?
>
> A     Yeah, I did.
>
> Q     Okay.  So, even though [the victim] is making up a story against you, accusing you of sexually abusing, you're sending her a letter telling her –
>
> A     That's my daughter.
>
> Q     – you want to take her to Disneyland?
>
> A     That is my daughter.  I know she's only doing that because of her mom.

Artis contends that Juror No. 6's alleged statement that her husband was on the grand jury that indicted him was improper because it led the jury to believe that he was in jail at the time he made the promise and thus evinced a consciousness of guilt.  But the record indicates that Artis's own testimony established that the promise conveyed to the victim was made while he was in prison and after his daughter had accused him of sexual abuse.  Therefore, because the record indicates that the extra-judicial information provided by Juror No. 6 was harmless, Artis cannot show that he was prejudiced by its introduction into jury deliberation.

In his Traverse, Artis additionally argues that he is entitled to an evidentiary hearing.  "The secrecy of deliberations is the cornerstone of the modern Anglo-American jury system." *United States v. Thomas*, 116 F.3d 606, 618 (2d Cir. 1997).  As a result, the Second Circuit has cautioned that courts should be "reluctant to haul jurors in after they have reached a verdict in

order to probe for potential instances of bias, misconduct, or extraneous influences." *Ianniello*, 866 F.2d at 543 (citation and internal quotation marks omitted). "[P]ost-verdict inquiries may lead to evil consequences: subjecting juries to harassment, inhibiting juryroom deliberation, burdening courts with meritless applications, increasing temptation for jury tampering and creating uncertainty in jury verdicts." *Id.* (citation omitted). Thus, a defendant may not be allowed to investigate jurors "merely to conduct a fishing expedition." *Id.* (citation omitted).

Nevertheless, a duty to investigate whether improper influences have been brought to bear on a jury's deliberations arises when "the party alleging misconduct makes an adequate showing of extrinsic influence to overcome the presumption of jury impartiality." *Id.* at 543. Indeed, a post-trial hearing is required where the moving party presents "clear, strong, substantial and incontrovertible evidence . . . that a specific, non-speculative impropriety has occurred." *United States v. Moon*, 718 F.2d 1210, 1234 (2d Cir. 1983) (internal citation omitted). A party alleging the existence of such an impropriety need not present irrefutable allegations; however, the allegations presented must be "sufficiently serious to warrant a further inquiry." *United States v. Schwarz*, 283 F.3d 76, 98 (2d Cir. 2002).

Artis has not met this burden. As discussed above, because the extra-judicial information was harmless, Artis fails to show that it had a meaningful impact on jury deliberations. Moreover, it is not clear what information Artis hopes to glean from such hearing. Federal Rule of Evidence 606(b) provides the parameters for the questioning of jurors when the validity of a verdict is called into question. Specifically, Rule 606(b) provides that "a juror may not testify as to any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the

verdit or indictment." FED. R. EVID. 606(b). The Rule only allows a juror to testify about whether "extraneous prejudicial information was improperly brought to the jury's attention" or "an outside influence was improperly brought to bear on any juror." *Id.* Given that the jurors have already provided sworn affidavits recounting their memories of the alleged statement, it is difficult to see what additional information an evidentiary hearing could provide in this case. Accordingly, Artis is not entitled to habeas relief or an evidentiary hearing on his juror misconduct claim.

Claim 2: Ineffective Assistance of Trial Counsel

Artis next claims that his trial counsel rendered ineffective assistance because he failed to: 1) subpoena the witnesses who interviewed the victim and play the videotape of the interview for the jury; 2) subpoena the arresting officer and his parole officer "to give credibility to [his] testimony"; 3) obtain DNA results, rap sheets of the prosecution's witnesses, or a psychological evaluation of the victim or her mother.

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Thus, Artis must show that his trial counsel's representation was not within the range of

competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard. "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness." *Rosario v. Ercole*, 601 F.3d 118, 124 (2d Cir. 2010) (citing *People v. Turner*, 840 N.E.2d 123 (N.Y. 2005)). The difference is in the second prong. Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's error, the outcome would have been different. "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that defendant did not receive a fair trial.'" *Id.* at 124 (quoting *People v. Benevento*, 697 N.E.2d 584, 588 (N.Y. 1998)). "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.'" *Id.* (quoting *Benevento*, 697 N.E.2d at 588). "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.'" *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard. *Turner*, 840

N.E.2d at 126. "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall." *Rosario*, 601 F.3d at 124 (citing *People v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)). The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard. *Id.* at 124, 126. The Second Circuit has likewise instructed that federal courts should, like the New York courts, view the New York standard as being more favorable or generous to defendants than the federal standard. *Id.* at 125.

Artis's claim must fail, however, even under the more lenient New York standard. First, the record does not support any inference that counsel's performance was deficient. As the appellate court found:

> Counsel made appropriate motions, engaged in meaningful cross-examination of the People's witnesses and presented a consistent defense that the mother manipulated the child into fabricating allegations of sexual abuse. The jury could not reach a verdict on a second count submitted to it, resulting in dismissal of that count. Considering the totality of the representation, counsel provided defendant with effective assistance.

Moreover, Artis cannot demonstrate that he was prejudiced by any of the asserted errors. Artis first complains that counsel failed to subpoena witnesses who interviewed the victim and failed to play the videotape of the interview for the jury. But the record indicates that counsel attempted to elicit that testimony but, as the appellate court noted, the trial court "correctly denied that request inasmuch as the victim had already admitted the inconsistency of her prior statements." He additionally argues that counsel should have subpoenaed the arresting officer and his parole officer. This argument also fails because Artis does not provide evidence, such as affidavits, showing that these witnesses would have testified at trial to what Artis claims they

would have.  As such, Artis's bare and conclusory allegations that these witnesses would have bolstered his credibility, unsupported by evidentiary facts, are not sufficient to rebut the presumption that trial counsel acted in a competent manner.  *See, e.g.*, *McCarthy v. United States*, No. 02 Civ. 9082, 2004 WL 136371, at *17 (S.D.N.Y. Jan. 23, 2004) (collecting cases in which courts have refused to entertain ineffective assistance claims where the petitioner fails to demonstrate that the witness would have testified at trial).  Artis also faults counsel for failing to "get D.N.A. results" but the testimony at trial indicates that no DNA evidence had been recovered.  Finally, Artis contends that counsel should have obtained the rapsheet of the victim's mother as well as a psychological evaluation of the victim and her mother.  But Artis fails to demonstrate that the outcome would have been different had such evidence been obtained. Again, Artis's bare, unsupported allegations are insufficient to rebut the presumption that trial counsel acted competently.  Accordingly, Artis is not entitled to relief on any argument advanced in this claim.

Claim 3: Insufficient Evidence to Support Conviction

Artis additionally claims that insufficient evidence supported his conviction.  In rejecting this claim on direct appeal, the Appellate Division determined that the following evidence was legally sufficient to support the conviction:

> The victim, who was nine years old at the time of trial, testified under oath that on one occasion when she was seven years old [Artis] instructed her to suck his penis, she did so, and [Artis] told her not to tell her mother because it "would break the happy family."  This testimony was legally sufficient to establish the crime of criminal sexual act in the first degree (*see* [New York] Penal Law § 130.50[3]).  Contrary to [Artis's] assertion, her sworn testimony did not need to be corroborated (*see* CPL 60.20[2], [3]). The victim's mother provided information that supported the victim's testimony, while [Artis] testified that no sexual activity ever occurred and that the mother manipulated the child to fabricate allegations of abuse to get revenge on him for breaking off their engagement.  The People also presented a letter that [Artis] wrote to his daughter from

jail promising to send her money and take her to Disneyland, and stating that he still loved her mother and wanted to marry her. The conflicting testimony "presented a quintessential credibility clash that typically occurs in cases of this nature" and we find no reason to disturb the jury's resolution of credibility in favor of the victim. Considering the evidence from a neutral perspective, and in light of the jury's credibility findings, the verdict was not against the weight of the evidence.

Artis argues in his Petition that the prosecution had no evidence because both witnesses impeached themselves. He alleges, "I was convicted due to a letter I wrote to my daughter out of love and concern. The jury claimed that the letter demo[n]strated a consciousness of guilt which I believe is a constitutional violation."

As an initial matter, to the extent that Artis claims that his conviction was against the weight of the evidence, such claim is not cognizable on federal habeas review. *McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011). "Unlike a sufficiency of the evidence claim, which is based upon federal due process principles, a weight of the evidence claim is an error of state law, for which habeas review is not available." *Garrett v. Perlman*, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) (citation and internal quotation marks omitted). "A weight of the evidence argument is a pure state law claim grounded in [CPL] § 470.15(5) which empowers New York State intermediate appellate court[s] to make weight of the evidence determinations." *Id.* (citation and internal quotation marks omitted).

Moreover, with respect to his sufficiency of the evidence claim, Artis misperceives the role of a federal court in a habeas proceeding challenging a state-court conviction. As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see*

*McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This Court must

therefore determine whether the New York court unreasonably applied *Jackson*. In making this

determination, this Court may not usurp the role of the finder of fact by considering how it

would have resolved any conflicts in the evidence, made the inferences, or considered the

evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical

facts that supports conflicting inferences," this Court "must presume–even if it does not

affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the

prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority

for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

Consequently, although the sufficiency of the evidence review by this Court is grounded in the

Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set

forth in state law. *Jackson*, 443 U.S. at 324 n.16. A fundamental principle of our federal system

is "that a state court's interpretation of state law, including one announced on direct appeal of the

challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546

U.S. 74, 76 (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the

state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be

accepted by federal courts as defining state law . . . ."). "Federal courts hold no supervisory

authority over state judicial proceedings and may intervene only to correct wrongs of

constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith

v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted). It is through this lens

that this Court must view an insufficiency of the evidence claim.

In this case, Artis's arguments with regard to his legally insufficiency of the evidence claim are nothing more than an attack on the testimony of the victim and her mother. But this Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995). Contrary to Artis's assertion, the fact that the jury's credibility assessments were not in his favor does not amount to a constitutional violation. Although it might have been possible to draw a different inference from the evidence, this Court is required to resolve that conflict in favor of the prosecution. *See Jackson*, 443 U.S. at 326. Artis bears the burden of establishing by clear and convincing evidence that these factual findings were erroneous. 28 U.S.C. § 2254(e)(1). He has failed to carry such burden. The record does not compel the conclusion that no rational trier of fact could have found proof that Artis was guilty of these crimes, especially considering the double deference owed under *Jackson* and AEDPA. Artis is therefore not entitled to relief on this claim.

Claim 4: Prosecutorial Misconduct

Artis next claims that the prosecution introduced false testimony because the prosecutor "knew the mother was sick and the charge was false." He further alleges that the prosecution denied him *Brady*[3] and *Rosario*[4] material.

---

[3]    *Brady v. Maryland*, 373 U.S. 83 (1962). The term "*Brady*" is a shorthand reference to the rules of mandatory discovery in criminal cases under federal law.

[4]    *People v. Rosario*, 173 N.E.2d 881 (N.Y. 1961). The term "*Rosario*" is a shorthand reference to the rules of mandatory discovery in criminal cases under New York law.

With regards to his claim that the prosecution knowingly elicited perjured testimony, a prosecutor has a duty of candor in court and an enduring obligation to pursue the truth. *See, e.g., United States v. Salameh*, 152 F.3d 88, 133 (2d Cir. 1998). "[T]he knowing use of perjured testimony involves prosecutorial misconduct and, more importantly, involves 'a corruption of the truth-seeking function of the trial process.'" *United States v. Bagley*, 473 U.S. 667, 680 (1985) (citing *United States v. Agurs*, 427 U.S. 97, 103 (1976)). This includes instances in which the "prosecution knew, or should have known, of the perjury." *Agurs*, 427 U.S. at 103 (citing *Mooney v. Holohan*, 294 U.S. 103 (1935)).

Artis has failed, however, to show that the prosecutor committed misconduct with respect to the mother's testimony. Artis has never articulated how the prosecution had either actual or constructive knowledge that the mother's testimony was false, and, indeed, has failed to establish that the testimony was actually false. Artis's claim is simply an attack on the witness's credibility, but this Court must defer to the jury's credibility findings concerning the mother's testimony. *See Bellezza v. Fischer*, Nos. 01-CV-1445, 03-MISC-0066, 2003 WL 21854749, at *15 (E.D.N.Y. Aug. 6, 2003) (holding that, on collateral review, a federal habeas court "must presume that the jury resolved any questions of credibility in favor of the prosecution") (internal quotation marks and citation omitted).

Artis likewise cannot show that the prosecutor committed misconduct through either a *Rosario* or *Brady* violation. Under *Rosario*, codified in CPL § 240.45, the prosecution must turn over to the defendant all written or recorded testimony of any person the prosecutor intends to call as a witness. 173 N.E.2d at 883. *Rosario* claims, however, are state law claims, not founded on either the federal constitution or federal laws, which are not cognizable in a federal habeas

proceeding.  *See, e.g.*, *Young v. McGinnis*, 411 F. Supp. 2d 278, 329 (E.D.N.Y. 2006); *Randolph v. Warden, Clinton Corr. Facility*, No. 04 CIV. 6126, 2005 WL 2861606, at *5 (S.D.N.Y. Nov. 1, 2005) ("the failure to turn over *Rosario* material is not a basis for habeas relief as the *Rosario* rule is purely one of state law").

Artis's *Brady* claim also must fail.  "To establish a *Brady* violation, a petitioner must show that (1) the undisclosed evidence was favorable to him; (2) the evidence was in the state's possession and was suppressed, even if inadvertently; and (3) the defendant was prejudiced as a result of the failure to disclose."  *Mack v. Conway*, 476 F. App'x 873, 876 (2d Cir. 2012) (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).  Artis does not identify in his Petition the material that the prosecution failed to provide him.  It appears that Artis refers to the transcript of the family court proceedings, which he attached to his *pro se* supplemental brief before the Appellate Division.  But as the Appellate Division determined, "[b]ecause the Family Court transcripts were not in the People's possession, the prosecution was not required to turn them over and the failure to do so did not constitute a *Brady* violation."  Artis has therefore failed to establish that the prosecution committed misconduct.

Claim 5: Judicial Bias

Artis likewise claims that he was subjected to judicial bias.  In order to prevail on a claim of judicial bias, a petitioner must show that he was denied a trial "by an unbiased and impartial judge without a direct personal interest in the outcome of the hearing."  *Ungar v. Sarafite*, 376 U.S. 575, 584 (1964).  A state court judge is required to recuse himself for bias only if he has demonstrated "deep-seated favoritism or antagonism that would make fair judgment impossible."  *Liteky v. United States*, 510 U.S. 540, 555 (1994); *McMahon v. Hodges*, 382 F.3d 284, 290 (2d

Cir. 2004) (holding that judge's statement that defendant would likely be convicted given evidence at co-defendant's trial did not require recusal); *see also LoCascio v. United States*, 473 F.3d 493, 496-97 (2d Cir. 2007) (recusal properly denied where rulings did not evidence deep-seated antagonism).

Here, Artis claims that "[t]he judge proved himself to be biased" by failing to admit the videotape of the victim's interview and by declining to hold hearings on Artis's juror misconduct and ineffective assistance of counsel claims. But the Supreme Court has explained that adverse judicial rulings, standing alone, are not probative of judicial bias. *Litesky*, 510 U.S. at 555. Artis's claims that the trial judge was biased as evidenced by his adverse rulings fails to set forth a violation of the due process clause. *Id.* at 556 ("All of these grounds are inadequate under the principles we have described above: They consist of judicial rulings, routine trial administration efforts, and ordinary admonishments (whether or not legally supportable) to counsel and to witnesses. All occurred in the course of judicial proceedings, and neither (1) relied upon knowledge acquired outside such proceedings nor (2) displayed deep-seated and unequivocal antagonism that would render fair judgment impossible."). Because none of the conduct about which Artis complains comes even close to approaching the standards required to show that he was denied a fair trial, Artis's judicial bias claim must fail.

<u>Claim 6: Speedy Trial Violation</u>

Finally, Artis contends that he was denied his constitutional right to a speedy trial. To the extent that Artis raises speedy trial violations based on New York criminal procedural law, a state statutory protection, his claims are not cognizable on federal habeas review. *See, e.g., Bermudez v. Conway*, No. 09-CV-1515, 2012 WL 3779211, at *9 (E.D.N.Y. Aug. 30, 2012);

*Hodges v. Bezio*, No. 09-CV-3402, 2012 WL 607659, at *4 (E.D.N.Y. Feb. 24, 2012); *Rodriguez v. Superintendent*, *Collins Corr. Facility*, 549 F. Supp. 2d 226, 236-37 (N.D.N.Y. 2008). Accordingly, any CPL § 30.30 speedy trial claim is not a basis for relief.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. CONST. amend VI. This right is enforced against the states through the Due Process Clause of the Fourteenth Amendment. *Klopfer v. N. Carolina*, 386 U.S. 213, 222-23 (1967). The right to a speedy trial functions "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker v. Wingo*, 407 U.S. 514, 532 (1972). As the Supreme Court made clear in *Barker*:

> [T]he right to a speedy trial is a more vague concept than other procedural rights. It is, for example, impossible to determine with precision when the right has been denied. We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate. As a consequence, there is no fixed point in the criminal process when the State can put the defendant to the choice of either exercising or waiving the right to a speedy trial.

*Id.* at 521; *see also Vermont v. Brillon*, 556 U.S. 81, 89 (2009) (the right to a speedy trial is "amorphous," "slippery," and "necessarily relative"); *United States v. Ghailani*, 733 F.3d 29, 41 (2d Cir. 2013).

The Supreme Court has established a multi-factor balancing test to aid courts in assessing whether a speedy trial violation has occurred: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his speedy trial right; and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530. The list is not exhaustive, and no single factor is dispositive. *Id.* Accordingly, "reasonable minds may disagree in close cases on whether the balance of factors tips in favor of recognizing a violation." *United States v. Ray*, 578 F.3d 184, 191 (2d Cir. 2009);

*see also Barker*, 407 U.S. at 521 ("It is, for example, impossible to determine with precision when the right has been denied.").

In this case, Artis was arrested and charged in a felony complaint on January 31, 2008, and was indicted on July 11, 2008—a period of less than six months. His first trial began in May 2009—one year and four months after he was arrested. Artis's retrial began five months later in October 2009. Artis has therefore demonstrated that the delay is "presumptively prejudicial." *See United States v. Vassell*, 970 F.2d 1162, 1164 (2d Cir. 1992) (suggesting that there is a general consensus that a delay of eight months is presumptively prejudicial); *see also Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992) (a delay that "approaches one year" is presumptively prejudicial). Nonetheless, Artis's claim fails in light of the application of the four *Barker* factors.

First, with respect to the length of the delay, a nineteen-month delay is shorter than the delays in other cases in which the Second Circuit has found no Sixth Amendment violation. *See United States v. Vasquez*, 918 F.2d 329, 338 (2d Cir. 1990) (twenty-six month delay did not violate right to speedy trial); *United States v. McGrath*, 622 F.2d 36, 41 (2d Cir. 1980). Second, as the appellate court noted, the mistrial and subsequent additional five-month delay was not attributable to the prosecution:

> [Artis] contends that his rights were violated because the People did not turn over transcripts from his related Family Ct. Act article 10 proceeding, requiring County Court to grant a mistrial in his first trial. Because the Family Court transcripts were not in the People's possession, the prosecution was not required to turn them over and the failure to do so did not constitute a *Brady* violation. Although County Court granted [Artis] a mistrial so that his counsel could obtain the transcripts for use at his criminal trial, that mistrial was not attributable to the People. Nothing in the record indicates a lack of readiness by the People after they first announced readiness and no postreadiness time was attributable to the People.

Furthermore, while Artis has reasserted his right to a speedy trial, he has not claimed that the delay in the commencement of his trial caused him to suffer any prejudice or prevented him from presenting a full defense. Accordingly, Artis cannot prevail on his speedy trial claim.

V. CONCLUSION

Artis is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: April 18, 2014.

                         /s/ James K. Singleton, Jr.
                         JAMES K. SINGLETON, JR.
                       Senior United States District Judge